**UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FELICIA COX and RAEMEL HENRY, INDIVUDALLY, and as Legal Guardians of N.H., a minor child, | Civil Action No.: 1:22-cv-2068 |
| Plaintiffs, | **COMPLAINT and JURY** |
| vs. | **TRIAL DEMAND** |
| ABBOTT LABORATORIES D/B/A ABBOTT NUTRITION, | |
| Defendant, | |

COMES NOW, FELICIA COX and RAEMEL HENRY, INDIVUALLY, and as Legal Guardians of N. H. ("Plaintiffs"), who states and alleges as follows:

**INTRODUCTION**

1. Plaintiffs bring this action against Defendant, Abbott Laboratories d/b/a Abbott Nutrition ("Defendant" or "Abbott") who purchased certain powdered infant formulas manufactured and sold by Abbott.

2. Plaintiffs, FELICIA COX and RAEMEL HENRY, bring this action on their own behalf, and as legal guardians of N.H., a minor child, to redress Defendant, Abbott Laboratories d/b/a Abbott Nutrition's ("Defendant" or "Abbott"), numerous unfair and deceptive acts and practices designed to mislead the public in connection with their promotion, marketing, advertising, packaging, labeling, distribution and/or sale of Similac Infant Formula, including but not limited to Similac®, Alimentum® and EleCare® products ("said Similac products") which Defendant unfairly and deceptively promoted during the relevant time period as containing ingredients safe for infant consumption and being safe for use, when, in fact, they cause bacterial infections and gastrointestinal

1

illnesses such as *Cronobacter sakazakii, Salmonella*, diarrhea, gastrointestinal illnesses, and other serious health problems.

3. Similac, owned and made by ABBOTT LABORATORIES INC., tells consumers that "[t]he Promise of Similac… [is] to help keep your baby fed, happy, and healthy"[1] and that Similac brand is "Nutrition you can trust."[2] But recent testing at one of Defendant's manufacturing facilities tells a different story—one of broken promises, mistrust and concealment. After receiving consumer complaints of *Cronobacter sakazakii* and *Salmonella* infections, the FDA's investigation along with the U.S. Centers for Disease Control and Prevention, and state and local partners, confirmed that Abbott's Sturgis, Michigan facility had findings to date of "several positive *Cronobacter sakazakii* results from environmental samples taken by the FDA and adverse inspectional observations by the FDA investigators."[3]

4. Moreover, Politico reported that the FDA first received a report of a foodborne illness suspected to be linked to infant formula in September—four months before issuing the recall of three major brands—after four babies were hospitalized and one died.[4] The Minnesota Department of Health investigated a case of an infant who was sickened by *Cronobacter sakazakii* in September 2021, the state agency told Politico.[5] State health officials in Minnesota knew that the infant had consumed powdered formula produced at an Abbott Nutrition facility in Sturgis, Mich., and shared

---

[1] Similac Home, Abbott, 2022, https://www.similac.com/home.html (last visited Feb. 20, 2022).
[2] The Promise of Similac, Abbott, 2022 https://www.similac.com/why-similac/promise-of-similac.html (last visited Feb. 20, 2022).
[3] FDA News Release, Feb. 17, 2022, https://www.fda.gov/news-events/press-announcements/fda-warns-consumersnot-use-certain-powdered-infant-formula-produced-abbott-nutritions-facility (last visited Feb. 20, 2022).
[4] FDA learned of suspected infant formula illness four months before recall, February 18, 2022, https://www.politico.com/news/2022/02/18/fda-infant-formula-illness-four-months-before-recall-00010226 (last visited Feb. 20, 2022).
[5] *Id.*

this information with the FDA and CDC in September of 2021.[6] Inspectors found *Cronobacter sakazakii* in several environmental samples taken at the plant, as well as records suggesting the company had been finding the bacteria in the plant and had destroyed product because of the issue.[7]

## JURISDICTION AND VENUE

5. This is an action for damages which exceeds the sum of $75,000.00, exclusive of costs, interest, and attorneys' fees.

6. This Court has jurisdiction over this case pursuant to 28 U.S.C. §1332, as complete diversity exists between Plaintiff and the Defendants, and the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.00.

7. This Court has personal jurisdiction over Defendant because Defendant resides in this District, and is incorporated under the laws of Illinois and is authorized to conduct business and does conduct business in the State of Illinois. Defendant has marketed, promoted, distributed, and/or sold its Recalled Products in the States of Illinois and Nevada, and Defendant has sufficient minimum contacts with this state and/or sufficiently avails itself of the markets in the state through its promotion, sales, distribution, and marketing within this state to render exercise of jurisdiction by this Court permissible.

8. Venue of this action is proper in this Court pursuant to 28 U.S.C. §§1391 (a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district. Venue is also proper under 18 U.S.C. §1965 (a) because Defendant is headquartered in this District and transacts substantial business in this District.

## PARTIES

9. Plaintiffs are residents of the Las Vegas, Nevada.

---

[6] *Id.*
[7] *Id.*

10. Defendant is an Illinois corporation with its principal place of business in Illinois.

11. Defendant is engaged in the business of manufacturing and selling medical devices and products, including powdered infant formulas through its Abbott Nutrition division.

12. Defendant's headquarters is located at 100 Abbott Park Road, Abbott Park, Illinois 60064.

13. Defendant may accept service via its registered agent CT Corporation System, 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.

## GENERAL FACTUAL ALLEGATIONS

14. Abbott manufactures and sells infant formula products. These products include the brands Similac, Alimentum, and EleCare which parents trust and use to feed and nourish their children.

15. On February 17, 2022, the U.S. Food and Drug Administration ("FDA") in conjunction with the U.S. Centers for Disease Control and Prevention ("CDC") alerted consumers to avoid purchasing or using certain powdered infant formula products produced at Abbott's Sturgis, Michigan facility.

16. Specifically, the FDA announced that it is investigating consumer complaints of *Cronobacter sakazakii* and *Salmonella* infections connected to powdered infant formula products produced by Abbott.

17. On February 17, 2022, Abbott announced a recall of its powdered infant formula products, including the brands Similac, Alimentum, and EleCare because they suffer from a defect which could result in serious injury, permanent impairment, and even be life-threatening.[8]

---

8 Abbott Voluntarily Recalls Powder Formulas Manufactured at One Plant, FDA: Recalls, Market Withdraws, & Safety Alerts (Feb. 17, 2022), https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/abbottvoluntarily- recalls-powder-formulas-manufactured-one-plant.

18. On February 28, 2022, the recall was expanded to include one lot of Similac PM 60/40 (Lot #27032K80 (can) / Lot #27032K800 (case)), which was also manufactured in Abbott's Sturgis, Michigan facility.[9]

19. Similac, Alimentum, and EleCare products where the first two digits of the product are 22 through 37 and the code on the container contains "K8," "SH," or "Z2," and the use-by date is April 1, 2022 or later are all part of the recall ("Recalled Products").

20. Despite the recall, Abbott is not crediting or replacing affected Recalled Products, which many parents and caretakers rely on daily to feed and care for their children. Since Abbott is now telling consumers it is not safe for their infants to consume these products, but many consumers rely on them to feed their children, Abbott leaves many consumers with no safe option but to pay full price for a newer version.

21. According to the FDA, *Cronobacter* bacteria can cause severe, life-threatening infections (sepsis) or meningitis (an inflammation of the membranes that protect the brain and spine). Symptoms of sepsis and meningitis may include poor feeding, irritability, temperature changes, jaundice (yellow skin and whites of the eyes), grunting breaths and abnormal movements. *Cronobacter* infection may also cause bowel damage and may spread through the blood to other parts of the body.[10] Further, according to the CDC, *Cronobacter* infections are often very serious for babies and can result in death.[11]

22. According to the FDA, *Salmonella* are a group of bacteria that can cause gastrointestinal illness and fever called salmonellosis. Most people with salmonellosis develop diarrhea, fever and abdominal cramps. More severe cases of salmonellosis may include a high

---

[9] See supra note 11.
[10] See supra note 8.
[11] CDC Cronobacter, 2022, https://www.cdc.gov/cronobacter/index.html (last visited Apr. 18, 2022)

fever, aches, headaches, lethargy, a rash, blood in the urine or stool, and in some cases, may become fatal.[12]

23. The FDA conducted three Form 483 inspections, which uncovered numerous violations of statutes and regulations as set forth herein in Defendant's manufacture, processing, packing, and holding of Similac, Alimentum, and EleCare powdered infant formulas—one in September of 2019, the second in September of 2021, and the third from January through March of 2022.[13]

24. The purpose of an FDA Form 483 inspection is to "notif[y] the company's management of objectionable conditions" and note any observed "conditions that in [the investigator's] judgment [which] may constitute violations of the Food Drug and Cosmetic (FD&C) Act and related Acts."[14]

25. As documented in the FDA Form 483 issued on September 24, 2019, Defendant failed to "test a representative sample of a production aggregate of powdered infant formula at the final product stage and before distribution to ensure that the production aggregate meets the required microbiological quality standards."[15]

26. Subsequent inspections established a pattern of Defendant's disregard of reasonable, responsible industry practices with respect to the manufacture, processing, packing, and holding of its powdered infant formulas.

---

[12] See supra note 8.
[13] See *supra* note 11.
[14] FDA Form 483 Frequently Asked Questions, FDA: Inspections, Compliance, Enforcement, and Criminal Investigations, https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/inspectionreferences/fda-form-483-frequently-asked-questions (last updated Jan. 9, 2020).
[15] 2019 FDA Form 483 Observations, https://www.fda.gov/media/156748/download?utm_medium=email&utm_source=govdelivery (last visited Apr. 18, 2022).

27. As documented in the FDA Form 483 issued on September 24, 2021, Abbott:

- Failed to "maintain a building used in the manufacture, processing, packing, or holding of infant formula in a clean and sanitary condition"; [16] and
- Had "[p]ersonnel working directly with infant formula, its raw materials, packaging, or equipment or utensil contact surfaces did not wash hands thoroughly in a hand washing facility at a suitable temperature after the hands may have become soiled or contaminated."[17]

28. On March 18, 2022, the FDA released the findings from its 2022 Form 483 inspection conducted at Abbott's facility, which noted that Abbott:

- Failed to "establish a system of process controls covering all stages of processing that was designed to ensure that infant formula does not become adulterated due to the presence of microorganisms in the formula or in the processing environment";[18]
- Failed to "ensure that all surfaces that contacted infant formula were maintained to protect infant formula from being contaminated by any source";[19]
- Failed to document any "determination as to whether a hazard to health exists" due to contamination with microorganisms;[20] and
- Had "[p]ersonnel working directly with infant formula, its raw materials, packaging, equipment, or utensil contact surfaces [who] did not wear necessary protective apparel."[21]

29. Additionally, Abbott's own records indicate that, in June of 2020, Abbott destroyed products due to a previous *Cronobacter* contamination,[22] establishing that Abbott, at various times:

- Had knowledge that *Cronobacter* contaminated its powdered infant formula manufactured, processed, and packaged at its Sturgis, Michigan plant;

---

[16] 2021 FDA Form 483 Observations, https://www.fda.gov/media/156747/download?utm_medium=email&utm_source=govdelivery (last visited Apr. 18, 2022).
[17] *Id.*
[18] 2022 FDA Form 483 Observations, https://www.fda.gov/media/157073/download?utm_medium=email&utm_source=govdelivery (last visited Apr. 18, 2022).
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] See supra note 8.

7

- Failed to adequately test for *Cronobacter* in its powdered infant formula; and
- Failed to ensure sufficient controls were in place to prevent contamination of its powdered infant formula manufactured, processed, and packaged at its Sturgis, Michigan plant.

30. The results of these investigations demonstrate a pattern of Defendant not only failing to take adequate, reasonable measures to protect the health and lives of infants consuming its powered infant formula products, but also failing to take even the common-sense measures, such as washing hands, upon learning of the risk of contamination of its products with microorganisms.

31. Plaintiffs purchased Abbott's powdered infant formula included in the recall. Plaintiffs would not have purchased the product or would have paid less for it had they known about the contamination and potential health hazards.

32. As a result of Abbott's unfair, deceptive, and/or fraudulent business practices, consumers of these products, including Plaintiff, have suffered an ascertainable loss, injury-in-fact, and otherwise have been harmed by Abbott's conduct.

A. PLAINTIFF'S USE OF ABBOTT'S RECALLED PRODUCT.

33. Plaintiffs have purchased Abbott's powdered infant formulas since on or about November 26, 2019.

34. Plaintiffs have regularly fed their infant with Abbott's powdered infant formulas.

35. In and around April 2020, Plaintiff purchased Abbott's Similac powdered infant formula.

36. In and around April 2020, Baby N. H. became ill and was hospitalized for bacterial infection which had moved to her brain.

37. She was discharged from the hospital with fine and gross motor delays which continue to date.

8

38. Plaintiff is now afraid to use Abbott's Recalled Product because of the health dangers described in Abbott's recall.

39. Plaintiff would not have purchased Abbott's Recalled Product if they had known it was defective and contaminated.

40. Plaintiff seeks a refund, reimbursement, or replacement of the Recalled Product, including any and all other damages for the injuries they have sustained as a result of Abbott's defective and contaminated Recalled Products.

## CAUSES OF ACTION

### COUNT I
### Negligence

41. Plaintiffs reallege and re-incorporate paragraphs 1-40 above as though fully set forth herein.

42. Defendant formulated, designed, manufactured, promoted, marketed, advertised, packaged, labeled, distributed and/or sold Similac products to consumers.

43. The use of said Similac products containing contaminants, including, but not limited to *Cronobacter sakazakii* and *Salmonella*, among other contaminants, causes serious

44. infections and illnesses including, but not limited to *Cronobacter sakazakii*, *Salmonella*, other bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses.

45. Defendant has a duty to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution and sale of Similac products, including a duty to ensure that said Similac products are safe for use and a duty to warn that Similac products may cause *Cronobacter sakazakii, Salmonella*, other bacterial

9

infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses.

46. As set forth in detail above, Defendant failed to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution and sale of said Similac products by failing to ensure that said Similac products were safe for use.

47. Specifically, Defendant was negligent in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution and sale of said Similac products in that they, among other things:

   a. Failed to use reasonable care in formulating, designing and manufacturing Similac products so as to ensure that they were safe for use and did not cause adverse health effects including, but not limited to *Cronobacter sakazakii, Salmonella*, other bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses;
   b. Failed to conduct adequate safety testing of Similac products and the ingredients used to make Similac products; and
   c. Failed to accompany Similac products with proper warnings regarding the possible adverse health effects associated with its use including, but not limited to, *Cronobacter sakazakii, Salmonella*, other bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses.

48. That Defendant breached the abovementioned duties to Plaintiffs.

49. That Defendant's breach of the abovementioned duties was the actual and proximate cause of Plaintiffs' injuries.

50. Despite the fact the Defendant knew or should have known that its Similac products could cause serious adverse health effects, it continued to market and sell them to consumers, including Plaintiffs, despite the reasonable possibility that said Similac products caused *Cronobacter sakazakii, Salmonella,* other bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses.

51. Defendant knew or should have known that consumers, including Plaintiff, would foreseeably be put at risk of *Cronobacter sakazakii*, *Salmonella,* other bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses to infant children as a result of Defendant's failure to give warning of the adverse health effects associated with use of said Similac products.

52. Defendant's negligence proximately caused Plaintiffs to be injured, including, but not limited to the following health related injuries, significant exposure to toxic substances, *Cronobacter sakazakii*, *Salmonella,* other bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses and other related injuries, as well as the associated costs of diagnostic screening and medical monitoring, and economic harm in that Plaintiff would not have purchased said contaminated Similac Alimentum products if he had known the true facts.

53. As a direct and proximate result of Defendant's negligence, Plaintiffs, Felicia Cox and Raemel Henry, Individually, and as legal guardian of N.H., a minor child, suffered significant exposure to toxic substances, which may cause or contribute to causing disease, bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, experienced in the past and to be experienced in the future, expense of hospitalization and medical care experienced in the past and to be experienced in the future, medical and nursing care and treatment experienced in the past and to be experienced in the future, loss of earnings, loss of ability to earn money in the future, which losses are permanent and continuing in nature and Plaintiffs will suffer the injuries and impairment in the future, and economic harm in that Plaintiff would not have purchased said contaminated Similac products if they had known the true facts.

## Count II
## Strict Product Liability

54. Plaintiffs reallege and re-incorporate paragraphs 1-40 above as though fully set forth herein.

55. Defendant formulated, designed, manufactured, promoted, marketed, advertised, packaged, labeled, distributed and/or sold Similac Infant Formula, including but not limited to Similac, Alimentum and EleCare products, or have partnered to formulate, design, manufacture, promote, market, advertise, package, label, distribute and/or sell said Similac Infant Formula, including but not limited to Similac, Alimentum and EleCare products.

56. At all times relevant, Defendant knew or should have known that said Similac products contained a non-obvious danger in their ingredients, as well as of the dangers of contaminated infant formula as described in this Complaint.

57. The Similac products that Defendant formulated, designed, manufactured, promoted, marketed, advertised, packaged, labeled, distributed and/or sold were defective in their formulation, design and/or manufacturing. Further, the Similac products were defective when they left control of the Defendant such that: (1) the foreseeable risks of *Cronobacter sakazakii*, *Salmonella,* other bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses posed by said contaminated Similac products exceeded the benefits associated with the formulation, design and manufacturing of Similac products, or (2) said Similac products were unreasonably dangerous, more dangerous than an ordinary consumer would expect, and more dangerous than other similar products.

58. Defendant knew that Plaintiffs would use said Similac products without expecting to be put at risk of *Cronobacter sakazakii*, *Salmonella,* other bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses to infant children.

However, Defendant failed to warn Plaintiffs as to the potential adverse health effects that using said contaminated Similac products could have.

59. Said Similac products were expected to and did reach Plaintiffs without substantial change in condition.

60. The said Similac products Defendant formulated, designed, manufactured, promoted, marketed, advertised, packaged, labeled, distributed and/or sold were defective due to inadequate formulation, design, manufacture, safety testing and inadequate warning of the Similac products' true nature.

61. Had Plaintiffs been warned about the contaminated Similac products and the risk of *Cronobacter sakazakii*, *Salmonella,* other bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses to infant children, as a result of the us of said Similac products and/or the danger that they posed, they would not have purchased, acquired or used said Similac products.

62. Plaintiffs were harmed directly and proximately by Defendant's failure to warn and defectively designed said Similac infant formula products. Such harm includes significant exposure to toxic substances, which may cause or contribute to causing disease; *Cronobacter sakazakii*, *Salmonella,* other bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses and other related injuries, as well as the associated costs of diagnostic screening and medical monitoring, and economic harm in that Plaintiff would not have purchased said contaminated Similac products if he had known the true facts.

63. Further, Plaintiffs, Felicia Cox and Raemel Henry, Individually, and as legal guardian of N.H., a minor child, was harmed directly and proximately by Defendant's defectively designed Similac products and their failure to warn. Such harm includes significant exposure to toxic

substances, which may cause or contribute to causing disease, bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, experienced in the past and to be experienced in the future, expense of hospitalization and medical care experienced in the past and to be experienced in the future, medical and nursing care and treatment experienced in the past and to be experienced in the future, loss of earnings, loss of ability to earn money in the future, which losses are permanent and continuing in nature and Plaintiffs will suffer the injuries and impairment in the future, and economic harm in that Plaintiff would not have purchased said contaminated Similac products if he had known the true facts.

## Count III
## Breach of Express Warranty

64. Plaintiffs reallege and re-incorporate paragraphs 1-40 above as though fully set forth herein.

65. Defendant provided Plaintiffs with written express warranties by promotion and other means that said Similac products were safe for use and promised to give babies a strong start by helping to keep them fed, happy and healthy.

66. Defendant breached these warranties in violations of applicable law, by manufacturing, promoting, marketing, advertising, distributing and/or selling said contaminated Similac products which resulted in damages to Plaintiffs.

67. Plaintiffs purchased said Similac products unaware that they contained contaminants.

68. But for Defendant's breach of warranty, Plaintiffs would not have purchased said Similac products.

69. Plaintiffs further assert claims under all other applicable state laws governing express warranties.

70. As a proximate result of this breach of warranty by Defendants, Plaintiffs have suffered economic and non-economic damages in an amount to be determined at trial.

71. Plaintiffs were harmed directly and proximately by Defendant's breach of express warranty. Such harm includes significant exposure to toxic substances, which may cause or contribute to causing disease; *Cronobacter sakazakii, Salmonella,* other bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses and other related injuries, as well as the associated costs of diagnostic screening and medical monitoring, and economic harm in that Plaintiff would not have purchased said contaminated Similac products if he had known the true facts.

72. Further, Plaintiffs, Felicia Cox and Raemel Henry, Individually, and as legal guardian of N.H., a minor child, was harmed directly and proximately by Defendant's breach of express warranty of said Similac products. Such harm includes significant exposure to toxic substances, which may cause or contribute to causing disease, bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, experienced in the past and to be experienced in the future, expense of hospitalization and medical care experienced in the past and to be experienced in the future, medical and nursing care and treatment experienced in the past and to be experienced in the future, loss of earnings, loss of ability to earn money in the future, which losses are permanent and continuing in nature and Plaintiffs will suffer the injuries and impairment in the future, and economic harm in that Plaintiffs would not have purchased said contaminated Similac products if he had known the true facts.

## COUNT IV
## Breach of Implied Warranty of Merchantability

73. Plaintiffs reallege and re-incorporate paragraphs 1-40 above as though fully set forth herein.

74. As alleged above, Defendant warranted that said Similac products were safe for use and promised to give babies a strong start by helping to keep them fed, happy and healthy.

75. Thus, Defendant warranted that said Similac products were reasonably fit for the intended use for infant consumption.

76. Because said Similac products described above contained contaminants, they are not reasonably fit for the uses intended or reasonably foreseeable.

77. Plaintiffs purchased said Similac products unaware that they contained contaminants.

78. But for Defendant's breach of warranty, Plaintiffs would not have purchased said Similac products.

79. As a direct and proximate result of Defendant's breach of warranty, Plaintiffs suffered injury in fact and actual damages.

80. As a proximate result of this breach of warranty by Defendants, Plaintiffs have suffered economic and non-economic damages in an amount to be determined at trial.

81. Plaintiffs were harmed directly and proximately by Defendant's breach of warranty. Such harm includes significant exposure to toxic substances, which may cause or contribute to causing disease; *Cronobacter sakazakii, Salmonella*, other bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses and other related injuries, as well as the associated costs of diagnostic screening and medical monitoring, and economic harm in that Plaintiff would not have purchased said contaminated Similac products if he had known the true facts.

82. Further, Plaintiffs, Felicia Cox and Raemel Henry, Individually, and as legal guardian of N.H., a minor child, was harmed directly and proximately by Defendant's breach of warranty of said Similac products. Such harm includes significant exposure to toxic substances, which may cause or contribute to causing disease, bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, experienced in the past and to be experienced in the future, expense of hospitalization and medical care experienced in the past and to be experienced in the future, medical and nursing care and treatment experienced in the past and to be experienced in the future, loss of earnings, loss of ability to earn money in the future, which losses are permanent and continuing in nature and Plaintiffs will suffer the injuries and impairment in the future, and economic harm in that Plaintiffs would not have purchased said contaminated Similac products if he had known the true facts.

## COUNT V
## Breach of Implied Warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

83. Plaintiffs reallege and re-incorporate paragraphs 1-40 above as though fully set forth herein.

84. The Similac Infant Formula, including but not limited to Similac, Alimentum and EleCare products are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

85. Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

86. Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5). Defendant impliedly warranted that Similac Infant Formula, including the Similac, Alimentum and EleCare products, were of merchantable quality and

fit for such use. This implied warranty included, among other things: (i) a warranty that said Similac products were manufactured, supplied, distributed, and/or sold by Defendant were safe and reliable for infant consumption; and (ii) a warranty that said Similac products would be fit for its intended use.

87. Contrary to the applicable implied warranties, the said Similac products at the time of sale and thereafter were not fit for their ordinary and intended purpose of infant consumption.

88. Instead, said Similac products are defective, contain contaminants and not safe for infant consumption.

89. Defendant's breach of implied warranty has deprived Plaintiffs of the benefit of their bargain.

90. The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

91. The alleged Similac infant formula product defects were inherent in each Similac product and were present in each Similac product at the time of sale.

92. As a direct and proximate cause of Defendant's breach of implied warranty, Plaintiffs sustained both economic and non-economic damages and other losses in an amount to be determined at trial. Defendant's conduct damaged Plaintiffs, who are entitled to recover actual damages, punitive damages, consequential damages, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

93. As a result of Defendant's violations of the Magnuson-Moss Warranty Act as alleged herein, Plaintiffs have incurred damages.

## COUNT VI
## Unjust Enrichment

94. Plaintiffs reallege and re-incorporate paragraphs 1-40 above as though fully set forth herein.

95. As a result of Defendant's unlawful conduct described above, Defendant was enriched at the expense of Plaintiffs.

96. Defendant has benefited from its unlawful acts by receiving excessive revenue derived from the sales of said Similac products represented as being safe for use. Defendant appreciated and/or knew the benefit of the receipt of such excessive revenue. This excessive revenue has been received by Defendant at the expense of Plaintiffs, under circumstances in which it would be inequitable for Defendant to be permitted to retain the benefit.

97. Thus, it would be unjust and inequitable for Defendant to retain the benefit without restitution to Plaintiffs for monies paid to Defendant for the sale of said contaminated Similac Alimentum products.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, Felicia Cox and Raemel Henry, Individually, and as legal guardian of N.H., a minor child, seeks the following relief against Defendant:

A. An order awarding Plaintiffs damages, and punitive damages in the amount to be determined at trial;

C. An order awarding restitution and disgorgement of Defendant's revenues from the products to Plaintiffs;

D. An order awarding attorneys' fees and costs to Plaintiffs;

E. An order awarding declaratory relief and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein;

F. An order providing for all other such relief as may be just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demands a trial by jury on all issues in this Complaint that are so triable.

Date April 21, 2022

        Respectfully submitted,
        /s/ Marjorie Levine
        MARJORIE LEVINE
        N. District of IL and Fla. Bar No. 96413
        JOHN F. ROMANO
        N. District of IL and Fla. Bar No. 175700
        ROMANO LAW GROUP
        P.O. Box 21349
        West Palm Beach, Florida 33416-1349
        Tele.: (561) 533-6700
        Fax: (561) 533-1285
        john@romanolawgroup.com
        marjorie@romanolawgroup.com
        mandy@romanolawgroup.com
        sally@romanolawgroup.com
        Email (service of pleadings only):
service@romanolawgroup.com